J-S04008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| EVAN SMITH, | |
| Appellant | No. 422 MDA 2014 |

Appeal from the Judgment of Sentence February 25, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0000418-2012

BEFORE:  BOWES, ALLEN, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 28, 2015**

Evan Smith appeals from the judgment of sentence of thirty to sixty years incarceration imposed by the trial court after a jury found him guilty of numerous sex offenses relative to the sexual abuse of his two step-daughters.  After careful review, we affirm.

The facts of this matter first came to light on August 23, 2011, when the mother of the victims informed police that Appellant, her estranged husband, and the step-father to the victims, had been sexually abusing her daughters, N.B. and K.B.  The abuse began in approximately 2007 and

---

[*]  Retired Senior Judge assigned to the Superior Court.

continued until 2010. The two girls were twelve and eleven years of age when the assaults started.[1]

Appellant used a ruse to strike fear into the victims and cause them to engage in sexual activity with him. Prior to the beginning of the school year in 2006, Appellant, the victims, and their mother moved into a home together. Within a year of moving in, Appellant claimed that the house was haunted by ghosts. He would write messages on the bathroom mirrors in steam, stating, "Die Virgins," assert that scratches on his body came from the ghosts, and put a red substance on the walls. Appellant informed both victims, though neither were aware of the abuse of the other, that a medium named Melinda told him that the girls needed to perform sex acts with him to stop the ghosts.

N.B. maintained that she was twelve when the first incident occurred. She stated that Appellant informed her that the sexual activity would have to take place on a specific date. On that day, she arrived home from school and Appellant instructed her to take her clothes off. When Appellant attempted to kiss N.B., she threw up in her hands. She pleaded with Appellant not to have to perform oral sex. Appellant acquiesced but told her that she would have to engage in sexual activity on another occasion.

---

[1] At the time of trial, N.B. was nineteen years of age and K.B. was seventeen years old.

Approximately one week later, Appellant made N.B. perform fellatio on him. According to N.B., Appellant indicated that Melinda had told him that the oral sex had worked. Nonetheless, within several months, Appellant again used the ghost fabrication to induce sex from the victim. Appellant informed N.B. that oral sex would not suffice and the two engaged in sexual intercourse. N.B. related that vaginal intercourse occurred but that it was so painful that Appellant began to have anal sex with her. She submitted that ordinarily she would be wearing a bra when the abuse occurred, but Appellant also made her wear leather skirts and boots.

Eventually, N.B. began to rebuff Appellant's advances as she grew older. Not dissuaded, Appellant told the victim that the ghosts would harm his son, E.M.S., who had recently moved in with the family. E.M.S. was eleven years old at the time. Accordingly, the abuse continued until Appellant and the victims' mother separated. N.B. admitted that she did not tell anyone of the abuse until August 23, 2011, and that the last sex act between her and Appellant transpired in 2010.

N.B.'s younger sister, K.B., testified similarly. K.B. stated that Appellant told her that Melinda instructed him that the two would have to engage in sex acts to prevent ghosts from harming the family. She added that at the time she did not know how to perform oral sex and Appellant taught her using a popsicle. Following Appellant's instruction, Appellant made K.B. perform oral sex on him. Appellant also maintained that he and

K.B. had to have oral sex once a week to prevent the ghosts from growing stronger.

Subsequently, Appellant progressed to other forms of sexual abuse. K.B. provided that they attempted vaginal intercourse but it was too painful; therefore, he began to have anal sex with the victim. Like her sister, she stated that Appellant would sometimes make her dress up in boots and pants with a hole in the crotch. K.B. indicated that the last time the abuse occurred was in 2010.

K.B. told her best friend of the abuse shortly before revealing it to her mother. K.B.'s best friend, Melanie, confirmed that K.B. told her about Appellant's actions. Melanie added that Appellant would make inappropriate remarks to the girls and often spoke of ghosts. Within a week of informing Melanie of the abuse, both K.B. and Melanie were in the car with the victim's mother. It was at this juncture that K.B. first revealed the abuse to her mother. The victim's mother immediately had K.B. contact N.B. to ask whether Appellant had abused her. After N.B. admitted the abuse, the victims' mother telephoned police on the aforementioned date.

The victims' mother also related that she discovered leather boots she did not own, pornography, penis pumps, boxes of condoms, and a used condom. The condom was located in a drop ceiling, but Appellant threw it in the trash. Police discovered the leather boots, the used condom, and spandex pants with the crotch removed in the home. On the outside of the

condom was DNA from both Appellant and K.B. Police also found pictures of the victims in leather apparel. Appellant's own son, E.M.S., also confirmed that his father frequently discussed ghosts, Melinda, and would touch the victims' buttocks and say sexual things to them. E.M.S. maintained that his dad asked the victims to do stripper struts and have sex with Appellant. No specific testimony was presented as to Appellant's age.

The jury found Appellant guilty of two counts each of rape, rape of a child, involuntary deviate sexual intercourse ("IDSI"), IDSI with a child, and corruption of a minor. It also determined that he was guilty of four counts of aggravated indecent assault and six counts of indecent assault. The court imposed an aggregate sentence of thirty to sixty years incarceration. This timely appeal ensued. However, trial counsel withdrew on that same date and new counsel was appointed. The court directed counsel to file a concise statement of errors complained of on appeal. After the granting of an extension, Appellant complied. The trial court then authored its opinion. The matter is now ready for our review. Appellant's sole issue on appeal is "Whether the evidence presented by the Commonwealth at trial was insufficient as a matter of law to support the jury's verdict, specifically with respect to the age-based offenses of Aggravated Indecent Assault (two counts), Indecent Assault (two counts), and Corruption of Minors." Appellant's brief at 4.

In conducting a sufficiency of the evidence review, we view all of the evidence admitted, even improperly admitted evidence. ***Commonwealth v. Watley***, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We consider such evidence in a light most favorable to the Commonwealth as the verdict winner, drawing all reasonable inferences from the evidence in favor of the Commonwealth. ***Id***. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail. ***Id***.

The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." ***Id***. In addition, the Commonwealth can prove its case by circumstantial evidence. Where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" a defendant is entitled to relief. This Court is not permitted "to re-weigh the evidence and substitute our judgment for that of the fact-finder." ***Id***.

Appellant's only argument is that, since the Commonwealth did not introduce his date of birth or any evidence as to his specific age, the evidence was insufficient to prove the crimes with an age component. Appellant maintains that the Commonwealth had to prove that he was more than four years older than the victims for one aggravated indecent assault

count and two indecent assault charges and over eighteen years of age for the corruption of minors counts.

The Commonwealth replies that the age of the defendant may be proven by circumstantial evidence. It notes that the jury observed Appellant, knew that he had been married to the victims' mother, heard testimony that the victims' mother met him while he was working for an eye doctor in Walmart, and that his own son was eleven years old at the time of the crimes.

Here, we find that, because the jury had an opportunity to view Appellant, *see **Commonwealth v. Miller***, 657 A.2d 946, 947-948 (Pa.Super. 1995), and because his own son was eleven years old at the time of the 2010 incidents, these facts preclude the possibility that Appellant was under the age of eighteen. In order for Appellant to have been less than eighteen, he would have been less than seven years old when his son was born. Sufficient circumstantial evidence demonstrated that Appellant was an adult at the time of the commission of the crimes. Thus, the corruption of minors charges stand. Similarly, the evidence proved that Appellant was more than four years older than the victims. The last sex acts occurred in 2010, when the victims were approximately fourteen and sixteen. We have already concluded that Appellant was older than eighteen. To have been under twenty years of age in 2010 would mean that Appellant fathered his child at nine. Appellant's claim is meritless.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/28/2015