J-S33008-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                          :          PENNSYLVANIA
                                          :
            v.                             :
                                          :
MAYA DANEE JOHNSON                  :
                                          :
            Appellant                 :     No. 1395 EDA 2020

Appeal from the Judgment of Sentence Entered June 29, 2020
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0003858-2017

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:              **FILED DECEMBER 15, 2021**

Maya Danee Johnson appeals from her June 29, 2020 judgment of sentence of time-served to twenty-three months of incarceration followed by four years of probation, which was imposed following her convictions for three counts of corruption of minors.  We affirm.

The trial court summarized the facts as follows:

> Detective Thomas J. Schreiber works for the Radnor Township Police Department.  In 2017, his department received a Childline referral from Children and Youth Services of Delaware County.  The referral concerned a teacher's aide who had shown inappropriate materials to a juvenile at Presbyterian Children's Village, which is a residential treatment facility for children with behavioral and mental health issues located in the township. Presbyterian Children's Village is a several acre property.  It has classrooms, recreation centers and cottages.  The cottages are used as dormitories for the students.  Each cottage has an aid[e] who is responsible for the residents living in the cottage.
>
> As part of his investigation, Detective Schreiber interviewed five children (girls) at the facility.  [Appellant] was the aid[e] in

charge of the cottage the girls lived in.  The girls told Detective Schreiber [Appellant] showed them a photo of herself in purple lingerie where her breast area could be plainly seen.  The girls who saw the photo told Detective Schreiber they were taken back by it.  The girls also reported seeing a video where [Appellant] flashed her buttocks area.  Thereafter, Detective Schreiber applied for an arrest warrant for [Appellant] as well as a search warrant for her personal iPhone.  Using the search warrant Detective Schreiber performed a logical extraction of [Appellant's] iPhone and recovered several videos and photos which matched the photos and videos which were described to him by the juveniles.  Admitted into evidence as Commonwealth Exhibit C-1 was a set of three photos found on [Appellant's] iPhone which matched the description of the lingerie that the girls described to Detective Schreiber.  There were also approximately five to nine close-up videos that showed female genitalia masturbating.  These videos were significant for Detective Schreiber['s] investigation because they also matched the description previously told him by the juveniles that they were shown a video of somebody ["playing with herself"] up close, by [Appellant].  [N.T. Non-Jury Trial, 1/15/19, at 123.  The videos were admitted into evidence as Commonwealth Exhibit C-3.

Three of the girls testified at trial and corroborated the allegations testified to by Detective Schreiber.  M.S. was [seventeen] at the time of the incident.  She testified [that Appellant] showed her and [another girl] a picture of herself in lingerie with her breasts exposed.  She identified Commonwealth Exhibit C-1 as the pictures she was shown.  M.S. testified the pictures made her feel uncomfortable.

S.H. was [sixteen] at the time of trial and approximately [fourteen] at the time of the incident.  She testified [that Appellant] showed her and other girls a video of herself masturbating.  She was shown the video by [Appellant] in the staff room at the Cottage where she resided.  S.H. testified the video made her feel uncomfortable and "grossed out."  S.H. also testified [that Appellant] on one occasion exposed her buttocks to her while S.H. was in her bedroom and [Appellant] was in the upstairs hallway of the Cottage.  S.H. generally felt uncomfortable with [Appellant] because [Appellant] was always talking about sex.

M.L. was [seventeen] at the time of trial and approximately [fifteen] at the time of the incident. She testified [Appellant] showed her and four other girls a video of herself masturbating corroborating S.H.'s testimony. She also corroborated S.H.'s testimony about being "mooned" by [Appellant].

Trial Court Opinion, 9/16/20, at 1-4.

On January 22, 2019, following a non-jury trial, Appellant was convicted of three counts of corruption of minors. Sentencing was deferred so that a pre-sentence investigation report could be prepared. On June 8, 2020, Appellant received an aggregate sentence of four to forty-six months of incarceration followed by four years of probation. Appellant filed a post-sentence motion alleging multiple discretionary sentencing issues and requesting a new trial based on the weight and sufficiency of the evidence. On July 6, 2020, the trial court held a hearing, after which it granted Appellant's request for reconsideration of her sentence. Appellant was resentenced to an aggregate sentence of time-served to twenty-three months of incarceration followed by four years of probation. The court denied Appellant's remaining post-sentence motion claims. This timely appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant raises the following issue for our review: "Was the evidence insufficient to prove [Appellant] guilty of corruption of minors?" Appellant's brief at 4.

Appellant challenges the sufficiency of the evidence to support her convictions for corruption of minors. Our standard of review when considering a challenge to the sufficiency of the evidence is

> [w]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Gause*, 164 A.3d 532, 540-41 (Pa.Super. 2017) (citations and quotation marks omitted).

In order to sustain a misdemeanor conviction for corruption of minors, the Commonwealth must prove that: (1) the defendant was at least eighteen years old at the time of the offense; (2) the victim was less than eighteen years old at the time of the offense; and (3) that the defendant's specific actions corrupted or tended to corrupt the minor's morals. *See* 18 Pa.C.S. § 6301(a)(1)(i). The corruption of minors statute does not require proof that the minor's morals were actually corrupted. *See Commonwealth v. Mumma*, 414 A.2d 1026, 1030 (Pa. 1980). Rather, a conviction will be upheld

- 4 -

where the knowing or intentional conduct of the defendant tends to have the effect of corrupting the morals of a minor. *See Commonwealth v. Dewalt*, 752 A.2d 915, 918 (Pa.Super. 2000).

This court has visited the question of what constitutes "corruption" of a minor's morals before. In *Commonwealth v. Decker*, 698 A.2d 99, 101 (Pa.Super.1997), we held that actions that tended to corrupt the morals of a minor were those that "would offend the common sense of the community and the sense of decency, propriety and morality which most people entertain." *See DeWalt*, *supra* at 918. This is a deliberately "broad" statute, as we have explained:

> [C]orruption of a minor can involve conduct towards a child in an unlimited number of ways. The purpose of such statutes is basically protective in nature. These statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. Because of the diverse types of conduct that must be proscribed, such statutes must be drawn broadly. It would be impossible to enumerate every particular act against which our children need to be protected.

*Commonwealth v. Barnette*, 760 A.2d 1166, 1173 (Pa.Super. 2000).

Herein, Appellant alleges that the evidence was insufficient to prove her guilty of corruption of minors on four grounds that the Commonwealth failed to prove: 1) that Appellant was eighteen years old at the time of the conduct; 2) that Appellant's conduct corrupted M.O.'s morals, since viewing cleavage was insufficient to corrupt the morals of a minor and the Commonwealth failed to prove what picture M.O. was shown; 3) that Appellant intentionally showed S.H. the video of Appellant masturbating and that "mooning" her was

- 5 -

insufficient to corrupt her morals; and 4) that Appellant corrupted M.L.'s morals because she testified that after being shown the video of Appellant masturbating "she was just quiet." **See** Appellant's brief at 9.

The trial court, who also sat as the fact-finder at trial, disagreed and addressed Appellant's arguments together:

> In this case the record, as referenced above, establishes [Appellant] was the adult aid in charge of the cottage where the juveniles resided. The victims, M.S., S.H., and M.L. were under [eighteen] years old at the time of the incident. Clearly [Appellant] showing juveniles pictures of herself in lingerie bare-chested and showing a video where she was masturbating are actions that would offend the sense of decency, propriety and morality which most people in the community entertain. Additionally, it must be noted that the juvenile victims in this case were in a residential treatment facility for behavioral and mental health issues. In other words, they were more vulnerable than the average child. Based on this evidence and the totality of the circumstances taken in the light most favorable to the Commonwealth as verdict winner, the evidence was clearly sufficient to sustain [Appellant's] conviction for corruption of minors. All the elements of the crimes were met by the Commonwealth beyond a reasonable doubt.

Trial Court Opinion, 9/16/20, at 10-11. We agree with the trial court.

First, Appellant argued that the Commonwealth failed to prove she was at least eighteen years old at the time of the criminal conduct. **See** Appellant's brief at 11. We disagree. It is well-settled that a defendant's age can be proven solely by circumstantial evidence, including a jury's opportunity to observe a defendant. **See Commonwealth v. Miller**, 657 A.2d 946, 947 (Pa.Super. 1995) (finding circumstantial evidence was enough to prove appellant's age where the victim identified appellant at trial, the jury observed appellant, and evidence was presented that appellant had a prior marriage

resulting in two daughters). Herein, like in **Miller**, the trial court was given ample opportunity to observe Appellant and draw his own conclusions as to her age. Additionally, at the time of the crimes, Appellant maintained employment where she supervised children up to age eighteen years of age at a residential treatment facility as the "adult aid." **See** N.T. Non-Jury Trial, 1/15/19, at 85; **see also** Trial Court Opinion, 9/16/20, at 10. Appellant also had several jobs prior to this one, such as a residential treatment counselor and paraprofessional educator with Victoria Hayes, a defense witness. **Id**. at 217. Accordingly, circumstantial evidence established that Appellant was over the age of eighteen at the time of this conduct.

Next, Appellant avers that the Commonwealth failed to establish that Appellant's conduct corrupted M.O.'s morals. **See** Appellant's brief at 11. M.O. testified that she was a juvenile resident of the cottage that Appellant was supervising when Appellant showed her and another resident a picture of herself in lingerie with her chest exposed. N.T. Non-Jury Trial, 1/15/19, at 52-55, 58-59. M.O. identified photographs of Appellant in lingerie as "similar to what [she] remember[ed]" in that the color of the lingerie and the way Appellant's face was angled were the same. **Id**. at 55. M.O. further explained that viewing the photograph "made me like uncomfortable" so a few days later she reported the incident to a different staff member. **Id**. at 56.

First, Appellant avers that the evidence was insufficient because M.O. testified that she "merely felt uncomfortable as a result of seeing the picture." Appellant's brief at 11. However, to establish corruption of a minor, the

Commonwealth did not need to prove that M.O.'s morals were actually corrupted. Instead, the Commonwealth need only prove that Appellant's actions tended to corrupt the morals of a minor and "would offend the common sense of the community and the sense of decency, propriety, and morality which most people entertain." *Decker*, *supra*, at 101. The record supports this conclusion.

Alternatively, Appellant alleges that the evidence was insufficient since M.O. testified that the photograph was similar to the one she saw but did not identify the photograph as the exact picture. *See* Appellant's brief at 12. Appellant relies on *Commonwealth v. Shirey*, 494 A.2d 420, 424 (Pa.Super. 1985), a case where we found the evidence insufficient to uphold a corruption of minors conviction after the Commonwealth failed to produce any of the "dirty" books, magazines, or pictures that the victims testified to being shown at trial. We find *Shirey* distinguishable from the case at bar.

Unlike in *Shirey*, here, the Commonwealth admitted all of the lingerie pictures and videos from Appellant's phone, which matched the description given by M.O. and the other girls. While M.O. did not explicitly identify the photograph as the one she saw, she did describe the lingerie and pose that Appellant made, which matched the pose and lingerie from the photographs that were admitted. Viewed in the light most favorable to the Commonwealth, together with all reasonable inferences, the trial court was free to find that one of these pictures was the one that Appellant showed to M.O. Accordingly,

the evidence was sufficient to convict Appellant of the corruption of minors charge related to M.O. and this sub-claim fails.

In her third sufficiency challenge, Appellant alleges that the Commonwealth failed to prove that she intentionally showed S.H. the video of her masturbating. *See* Appellant's brief at 12. S.H. testified that she was in Appellant's office with a couple of other girls when Appellant showed all of them pictures of her body and a video of herself masturbating. *See* N.T. Non-Jury Trial, 1/15/19, at 94, 105. While S.H. clarified that Appellant did not show the video directly to S.H., S.H. was in the small room with the other girls when Appellant was playing the video on her iPhone. *Id*. Based on this testimony, Appellant argues that Appellant did not directly show S.H. the video and, therefore, the conviction for corruption of minors of S.H. was insufficient. Appellant relies on *Dewalt*, *supra* to support her argument. We do not find *Dewalt* applicable herein.

In *Dewalt*, *supra* at 916, the evidence at trial revealed that appellant, while outside on her own back porch and in the company of two adults, lifted her shirt and performed a short striptease. During the striptease, the appellant accidentally removed her underwear with her jeans. *Id*. at 919. Unbeknownst to her, three minor boys looked on while standing atop a roof next door. *Id*. Appellant was convicted of corruption of minors based on what the minor boys witnessed. Thereafter, she appealed her corruption of minors convictions on sufficiency grounds. On appeal, we found that the evidence

belied the intentional aspect of the corruption of minors charges, since the appellant was unaware that the minor boys were watching. *Id*.

In contrast to *Dewalt*, herein, Appellant knew S.H. and the other girls were in the room and intended to show the underage female residents the video of her masturbating. In addition to S.H.'s testimony about the video, M.L. also testified. M.L. corroborated and expanded on S.H.'s testimony, agreeing that they were both in the office when Appellant showed them the video. *See* N.T Non-Jury Trial, 1/15/19, at 118. M.L. also explained how Appellant identified herself in the video before tilting her phone towards the girls. *Id*. at 118-24, 150-51. Viewing the record as a whole, *Dewalt* does not apply.

As an alternative avenue to relief, Appellant argues that "mooning" S.H., by exposing her butt and some of her thighs, did not offend the propriety and morality that most people entertain. *See* Appellant's brief at 12-13. Appellant does not cite to any authority in support of her position that we should consider her various lewd acts towards one victim individually. In addition to showing S.H. a video of herself masturbating, S.H. also testified that Appellant stopped in front of her open bedroom door, pulled down her pants, and "mooned" S.H., exposing her butt and some of her thighs. N.T. Non-Jury Trial, 1/15/19, at 84-85, 90-91, 109-110. Viewing this evidence as a whole, the trial court did not err when it found that this evidence was sufficient to convict Appellant of corruption of minors related to S.H.

In her final allegation of error, Appellant avers that the Commonwealth failed to prove that Appellant corrupted M.L.'s morals because she testified that her reaction to Appellant's actions was to be "quiet." *See* Appellant's brief at 13; *see also* N.T. Non-Jury Trial, 1/15/19, at 125. We disagree with Appellant's characterization of M.L.'s testimony. At trial, M.L. described Appellant's actions in the video as "playing with herself" or touching her vagina with her fingers and said that she could hear "something wet." N.T. Non-Jury Trial, 1/15/19, at 123-25. M.L. explained that viewing the video and hearing this noise made her feel "uncomfortable." *Id*. at 118. M.L. also described Appellant "mooning" them as "inappropriate." *Id*. at 125-26.

Further, the trial court was not required to find that M.L.'s morals were actually corrupted before convicting Appellant of corruption of minors. Instead, the court needed to determine whether Appellant's actions tended to corrupt the morals of M.L. and that Appellant's actions "would offend the common sense of the community and the sense of decency, propriety and morality which most people entertain." *See DeWalt*, *supra* at 918. The trial court, sitting as fact finder, was given the opportunity to assess M.L.'s testimony in conjunction with the video, and found that Appellant's actions were of such a type. *See* Trial Court Opinion, 9/16/20, at 10. Viewed in the light most favorable to the Commonwealth, together with all reasonable inferences, there was sufficient evidence for the court to convict Appellant of corruption of minors related to M.L. Appellant's final claim fails.

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/15/2021</u>