J-S34023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| ROBERT H. AUSTIN | : | No. 1751 MDA 2024 |
| | | |
| Appellant | | |

Appeal from the Judgment of Sentence Entered September 4, 2024
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0004939-2021

BEFORE:  STABILE, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.: **FILED JANUARY 30, 2026**

Robert H. Austin ("Austin") appeals from the judgment of sentence following his convictions for rape of a child, statutory sexual assault, involuntary deviate sexual intercourse ("IDSI") with a child, sexual assault, corruption of minors, indecent assault of a child under 13, indecent exposure, photographing sex act of minor under 18, possession of child pornography, unlawful contact with a minor, solicitation of nude photograph of minor under 18, and indecent assault of a child under 16.[1]  Finding no merit in Austin's ten claims for relief, we affirm.

---

[1] **See** 18 Pa.C.S.A. §§ 3121(c), 3122.1, 3123(b), 3124.1, 6301(a)(1)(ii), 3126(a)(7), 3127(a), 6312(b), 6312(c), 6318(a)(1.2), 902(a), 3126(a)(8).

The charges in this case concern Austin's sexual abuse of his girlfriend's daughters, A.B.[2] and D.B., beginning when they were six and seven years old respectively.[3]  Austin, or "Rob," as the girls called him, was the boyfriend of A.B.'s and D.B.'s mother ("Mother"), and began living with the family when D.B. was seven years old.  **See** N.T, 102-06.[4]  When D.B. was eight years old, Austin called her to him and told her to put his penis in her mouth; when she did, Austin lowered his shorts and used a camera to photograph her doing so.  **See id**. at 109-15.  On another occasion, D.B. awoke to find Austin's mouth on her genitals.  **See id**. at 115-17.

When D.B. was around eleven or twelve years old, Austin drove her onto some backroads and touched her between her legs while A.B. was in the back seat.  **See id**. at 117-19.  D.B. recalled another occasion when Austin said they had to have a talk, closed the door to her room, pulled her pants down, and tried to insert his penis in her vagina.  Austin stopped when D.B. told him it hurt, apologized, and took her to get ice cream.  **See id**. at 119-23.

D.B.'s family later moved to a new address where they lived from the time she was in middle school until her freshman year of high school.  D.B.

---

[2] At the time of trial, A.B. identified by a male name.  **See** N.T., at 182. Because she testified Austin abused her when she identified as female, we refer to A.B. with female pronouns.

[3] D.B. was born in February 2006; A.B. was born in September 2007.  **See** N.T., at 102.

[4] The notes of testimony are numbered consecutively from the first day of trial until the last.

recalled an occasion at the house when Austin said he would return electronics her mother had confiscated; in exchange, Austin required D.B. to allow him to lick her vagina, while he kept her siblings downstairs. *See id*. at 147-48. Austin also told D.B. she could "shave below the waist" if she wanted to. *See id*. at 126-34. On one occasion, Austin apologized to D.B. for his actions and told her he had tried to kill himself. *See id*. at 143, 170.

The last time D.B. saw Austin, he came into the room she shared with A.B. and falsely accused the girls of touching themselves. He called Mother at work and when she got home, declared himself "done," and left the house for good. *See id*. at 136-37, 223-25. Shortly thereafter, Mother became pregnant by Austin. Worried Mother would reconcile with Austin and he would return to the home, D.B. revealed Austin's abuse to her aunt, J.L., in July 2021. *See* N.T. at 136-41, 327. D.B. talked to A.B. about Austin's behavior; A.B. told D.B. Austin had sexually abused her as well. *See* N.T., at 132, 175.

J.L. told Mother of Austin's abuse of the girls in July 2021, but Mother did not seem to care. *See id*. at 140-42, 157, 164-65, 172. Herself the victim of sexual abuse, J.L. had a friend report Austin's sexual abuse of D.B. and of A.B. to the authorities in late August 2021. *See id*. at 331-32, 403. In September 2021, Kimberly Hine ("Ms. Hine"), a forensic interviewer with Lancaster County Children's Alliance ("LCCA"), conducted a recorded interview

with D.B., at which D.B. disclosed Austin's sexual abuse of her. ***See*** N.T., 395-97, and Commonwealth Exhibit 5.[5]

At trial, A.B. recalled a progression of abuse that began with Austin kissing her on the mouth and progressed to him touching her chest under her shirt and the inner part of her thighs and her genitals, and penetrating her vagina with his finger. ***See*** N.T., at 191-92, 196-200. A.B. recalled an incident when she was around eleven when Austin lowered her pants and underwear and took a photograph with a camera. ***See id***. at 193-95. When A.B. was in fourth or fifth grade, Austin asked her to send him pictures "under [her] clothes." ***See id***. at 200-01.

At about twelve years old, A.B. began telling Austin his behavior caused discomfort. ***See*** N.T., at 202-03. Austin promised not to continue but repeatedly broke his promise. ***See id***. at 203-04. Austin later sent A.B. text messages asking A.B. to be in his presence and saying, "I ain't here for any of that or the past. You can sit in the blue chair and leave the door open. . . . Can't you just give me a damn chance to show you we can just be cool and not have no bullshit?" ***See id***. at 207-10. When A.B. stated discomfort with Austin, Austin responded, "Jesus, what you wanna do, and I do accept it. . . . I'm not here to do anything that happened before, but okay, sorry." ***See id***.

_____

[5] As discussed below, the motion's court had previously admitted evidence of D.B.'s statement to Ms. Hine under the Tender Years Act Hearsay Exception ("Tender Years Act"), 42 Pa.C.S.A. § 5985.1.

at 211. Later Austin wrote, "[I]s it really that hard to believe in people changing?" *See id*. at 213-14, 207, 220, 227, 299.

Like D.B., A.B. did not feel comfortable telling Mother about Austin's abuse. When A.B. told Mother about being uncomfortable with Austin, Mother continued to allow him to stay in the home. *See id*. at 225-40. After J.L. arranged for the abuse to be reported in September 2021, A.B. gave a recorded interview describing Austin's abuse to Karen Melton ("Ms. Melton"), an LCCA supervisor and former forensic interviewer. *See id*. at 240, 354-58.[6] Detective Jared Snader ("Detective Snader") testified J.L. had revealed Austin previously threatened to kill himself. *See id*. at 413.

On July 8, 2022, the Commonwealth filed a petition to admit evidence at trial under the Tender Years Act Hearsay Exception ("Tender Years Act"), 42 Pa.C.S.A. § 5985.1, including D.B.'s and A.B.'s statements and recorded interviews. In January 2023, the court[7] conducted a two-day hearing on the Commonwealth's petition. The Commonwealth's evidence at that hearing included Mother's testimony that in March 2021, A.B. sent her an email asking if she would be comfortable sharing a house with someone who touched her private parts, *see* N.T. 1/4/23, at 12-13, 21, J.L.'s testimony that in July 2021, D.B. disclosed Austin's sexual abuse of her and A.B. to her and because Mother

---

[6] As discussed below, the trial court had previously admitted evidence of A.B.'s statement to Ms. Melton under the Tender Years Act Hearsay Exception ("Tender Years Act"), 42 Pa.C.S.A. § 5985.1.

[7] A different court decided the Tender Years Act motion; the trial court was assigned to the case thereafter.

did not seem to care, J.L. testified she arranged for the abuse to be reported to authorities, *see id*. at 23-31, Ms. Melton's testimony about her September 2021 interview of A.B. in which A.B. disclosed Austin's sexual abuse of her, *see id*. at 33-43, and Ms. Hine's testimony about her September 2021 interview of D.B. in which D.B. described Austin's sexual abuse of her, *see* N.T., 1/13/23, at 5-7. The court also viewed the recordings of A.B.'s and D.B.'s forensic interviews.

The parties filed briefs concerning the admissibility of the Tender Years evidence. Subsequently, on March 13, 2023, Austin filed a motion *in limine* in the trial court[8] to preclude evidence including, *inter alia*, A.B.'s statement to Ms. Melton of feeling bad because of the belief Austin had "done this" to multiple other people, and A.B.'s statement to Ms. Melton that Austin had shown A.B. pornographic images. Austin's Motion *in Limine*, 3/13/23, at 1-2 (unnumbered). On April 1, 2024, the trial court ordered a redaction of A.B.'s testimony for a one minute and sixteen second period from time stamp 56:04 to time stamp 57:20,[9] but denied the remainder of the motion. **See** Order, 4/1/24.

On July 11, 2023, the trial court entered an order granting the Commonwealth's Tender Years petition but redacting D.B.'s statements from

---

[8] This document is not included in the certified record.

[9] In the cited portion of the video, A.B. discloses she saw nude photographs and videos involving Austin and Mother.

time stamp 1:11:50 to 1:13:37 and A.B.'s statements from time stamp 1:05:56 to time stamp 1:05:39.[10]

At trial, a jury convicted Austin of all of the charged offenses. The trial court imposed a sentence of thirty-one to sixty-seven years of imprisonment. Austin timely appealed and he and the trial court complied with Pa.R.A.P. 2024.

On appeal, Austin raises ten issues for our review:

1. Whether the [trial c]ourt erred and abused its discretion in granting the Commonwealth's petition to admit out of court statements under the Tender Years Hearsay Exception . . . including statements that Victim #1 made to Victim #2, [Mother], and Kimberly Hine and statements that Victim #2 made to Victim #1, [Mother], and Karen Melton[?]

2. Whether the [trial c]ourt erred and abused its discretion in denying [Austin's] motion *in limine* to exclude statements from Commonwealth witness A.B. that she feels bad because she thinks [Austin] has done this to other people?

3. Whether the [trial c]ourt erred and abused its discretion in denying [Austin's] motion *in limine* to exclude statements from Commonwealth witness D.B. where they were questioned and provided answers on whether [Austin] had shown her inappropriate images on the internet?

4. Whether the [trial c]ourt erred and abused its discretion in overruling a [d]efense objection regarding an out of court statement from another witness that [Austin] threatened to commit suicide after the allegations came out[?]

_____

[10] As the trial court explained, the redacted statements concerned references to an alleged suicide attempt by Austin. The court ordered those references redacted from the recorded interviews but explicitly stated in its ruling that the redaction from the video "do[es] not bar the Commonwealth from offering evidence at trial of [Austin's] suicide attempt, should it be relevant and not otherwise barred by the Pennsylvania Rules of Evidence." Order, 7/11/24, at 2 n.2-3.

- 7 -

5. Whether the [trial c]ourt erred and abused its discretion in allowing the jury to be instructed on consciousness of guilt by conduct of [Austin] as it relates to the hearsay statements of [Austin]'s threat to commit suicide?

6. Whether the [trial c]ourt erred and abused its discretion in instructing the jury that the age of the defendant and the consent of the victim were not issues for the jury to consider?

7. Whether the evidence presented by the Commonwealth was insufficient to prove beyond a reasonable doubt that [Austin] had committed the following criminal offenses where there was no evidence presented to show [Austin]'s age: . . . Rape of Child . . . Statutory Sexual Assault . . . Involuntary Deviate Sexual Intercourse with Child . . . Involuntary Deviate Sexual Intercourse with Child . . . Corruption of Minors . . . Indecent Assault on Person Less than 13 Years of Age . . . Indecent Assault on Person Less than 13 Years of Age . . . Indecent Exposure . . . Unlawful Contact with Minor . . . Unlawful Contact with Minor . . . Indecent Assault on Person Less than 16 . . . Indecent Assault on Person Less than 16 . . . ?

8. Whether the [trial c]ourt erred and abused its discretion in denying [Austin]'s motion for judgement [sic] of acquittal on all charges relating to the age of [Austin] where no evidence of [Austin]'s age was put in evidence?

9. Whether [trial c]ourt erred and abused its discretion by denying [Austin's] post-sentence motion for a new trial based on their [sic] challenge that the verdict was against the weight of the evidence?

10. Whether the [trial c]ourt erred and abused its discretion by imposing a sentence that is manifestly excessive because the [trial c]ourt did not consider the relevant factors under the Pennsylvania Sentencing Code including [Austin's] rehabilitative needs, age, and background?

Austin's Brief at 13-16 (issues reordered).

Austin first asserts the court abused its discretion by admitting Tender Years Act evidence. **_See_** Austin's Brief at 27-33.

The admission of evidence is within a trial court's sound discretion and will only be reversed where the court clearly abuses that discretion. ***See Commonwealth v. Wilson***, 273 A.3d 13, 19 (Pa. Super. 2022). An abuse of discretion occurs only where the judgment is "manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." ***Id***. (internal citation omitted). It is not enough to persuade an appellate court it would have reached a different result; an appellant must show the trial court abused its discretionary power. ***See Commonwealth v. Norton***, 201 A.3d 112, 120 (Pa. 2019).

Section 5985.1 of the Judicial Code, known as the "Tender Years" exception to the hearsay rule, provides as follows:

**Admissibility of certain statements**

**(a) General rule.**

(1) An out-of-court statement made by a child victim or witness, who at the time the statement was made was 16 years of age or younger, describing any of the offenses enumerated in paragraph (2) [including, *inter alia*, various statutes relating to sexual abuse and sexual abuse of children], not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(i) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(ii) the child either:

(A) testifies at the proceeding; or
(B) is unavailable as a witness.

42 Pa.C.S.A. § 5985.1(a). A court assesses relevance and reliability by considering factors including, *inter alia*, the spontaneity of the statements, consistency in repetition, the declarant's mental state, use of terms unexpected in children of that age, and the lack of a motive to fabricate. ***See Commonwealth v. Walter***, 93 A.3d 442, 451 (Pa. 2014).

Austin asserts he was denied the opportunity at the Tender Years hearing to cross-examine Mother, Aunt, or Ms. Melton regarding A.B.'s statements, and the trial court could not determine the indicia of reliability of these statements "when it failed to hear all of the evidence that was to be presented at trial." Austin's Brief at 27-28.

The trial court found the evidence satisfied the admissibility requirements of the Tender Years hearsay exception because the victims were sixteen years old or younger at the time of their statements and were available to testify at trial. ***See*** Trial Court Opinion, 3/19/25, at 28.

Austin is due no relief on his claim that the court was unable to determine the reliability of D.B.'s statements. The court that heard the Tender Years motion heard the testimony of both forensic interviewers, the testimony of Mother and Aunt about A.B.'s and D.B.'s prior statements; the court also saw their more-than-one-hour, filmed forensic interviews and determined the evidence met the statutory requirements. Moreover, contrary to Austin's assertions counsel ***did*** have the opportunity to cross-examine the Tender Years witnesses. ***See*** N.T., 1/4/23, at 28-33, 45-53; 1/13/23, at 8-14. Thus, the court clearly had the ability to assess the reliability of the statements.

*See* 42 Pa.C.S.A. § 5985.1(a); *Walter*, 93 A.3d at 451. Austin fails to demonstrate an abuse of discretion in the admission of the statements as Tender Years statements.

Austin next asserts the court abused its discretion by denying his motion *in limine* to preclude: 1) A.B.'s statement of feeling bad because she feared Austin had "done this" to other people, *id*. at 28-30, and 2) D.B.'s statement Austin showed inappropriate images, because he was not charged with that offense, *see id*. at 31-32.

An examination of A.B.'s recorded interview does not support the assertion she stated a fear that Austin sexually abused others, *i.e.* more than her and D.B. Rather, in the interview with Ms. Melton, A.B. recounted discussions with her mother, who told A.B. she was sorry for what Austin "took" from A.B. and D.B., but she would permit Austin to sleep on the couch. A.B. reported to Ms. Melton that A.B.'s mother said to her A.B. could not instruct her (mother) whom to like; A.B. then declared that she felt Austin manipulated Mother, as well as A.B. and D.B., and, "I feel bad that what [Austin has] done happened to multiple people." N.T., 4/10/24, 358; Commonwealth's Exhibit 5 at 1:07:00-1:08:39. Thus, taken in context, A.B.'s remark focused on Austin's manipulation of Mother, A.B. and D.B., and the fact that what he did to A.B. and D.B. affected others including her mother.

Accordingly, the court did not abuse its discretion by declining to redact A.B.'s statement.[11]

Regarding D.B.'s statement to Ms. Hine that Austin showed her inappropriate images on his computer, the charges against Austin included corruption of minors. As a panel of this Court recently stated, the display of pornography establishes the material elements of corruption of minors. **See Commonwealth v. Phillips**, 2025 WL 523868 at *7, (Pa. Super., filed February 18, 2025).[12] The court did not abuse its discretion by declining to preclude this evidence.

Austin's last evidentiary issue asserts the trial court ordered the Commonwealth to redact references to his attempted suicide from the recorded interviews of A.B. and D.B, **see** Austin's Brief at 27, and asserts Detective Snader's testimony about his threat to commit suicide was inadmissible hearsay. **See** Austin's Brief at 32-33.

The trial court briefly states the detective's statement about the threat of suicide was admissible to explain the detective's course of conduct and was not offered for its truth. **See** Trial Court Opinion, 3/19/25, at 31.

_____

[11] Given our ruling, we do not address the Commonwealth's theory A.B.'s statement was admissible to refute an attack on her credibility. **See** Commonwealth's Brief at 24-25.

[12] Pursuant to Pa.R.A.P. 126(b), unpublished memoranda filed by this Court after May 1, 2019, may be cited for their persuasive value.

We find the trial court properly admitted the challenged testimony. Detective Snader testified Mother reported to him that Austin had threatened suicide. As part of his investigation, he spoke with the Manheim Township Police Department and learned that Austin's girlfriend had reported that on another occasion Austin had taken a bottle of pills and threatened to commit suicide. **See** N.T. at 412-13. Detective Snader testified he reported this concern to Mother, who downplayed the concern and said D.B. and A.B. considered the threat a tactic to garner sympathy. **See id**. at 413-14. The record thus supports the trial court's ruling that the detective's testimony was not admitted for its truth but to explain his course of conduct regarding the investigation. Additionally, D.B. had already testified, without objection, that Austin told her and A.B. and their Mother that he had attempted unsuccessfully to kill himself. **See** N.T. at 143, 170. D.B's testimony was admissible as the statement of a party opponent. **See** Pa.R.E. 803(25).[13] The detective's testimony about Mother's report of his threat to commit suicide was thus not only admissible but cumulative of other, unobjected to, and admissible, evidence.

Austin next claims the trial court erred in its jury instructions concerning his suicide attempt and his age. **See** Austin's Brief at 33-35.

_____

[13] Moreover, as discussed above, although the trial court redacted D.B.'s and A.B.'s recorded statements concerning Austin's attempted suicide, it expressly stated it was not precluding trial evidence of a suicide attempt if relevant and admissible under the Pennsylvania Rules of Evidence. **See** Order, 7/11/13, at 2 n.2-3.

To preserve a challenge to a jury instruction, an appellant must have objected to the charge at trial. *See Commonwealth v. Davis*, 273 A.3d 1228, 1246 (Pa. Super. 2022). A general objection to a jury charge will not preserve an issue for appeal, specific exception must be taken to the allegedly improper language. *See* Pa.R.A.P. 302(b); *see also* Pa.R.Crim.P. 647(C) (providing no portion of a jury instruction may be assigned as error unless specific objections are made thereto before the jury retires to begin its deliberations). This rule requiring an objection after the instruction applies even if counsel requested a point for charge and the court denied the request:

> The pertinent rules . . . require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction. Although obliging counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the court an opportunity to avoid or remediate possible error, thereby eliminating the need for appellate review of an otherwise correctable error.

*Commonwealth v. Parker*, 104 A.3d 17, 29 (Pa. Super. 2014), quoting *Commonwealth v. Pressley*, 887 A.2d 220, 224 (Pa. 2005).

A trial court has broad discretion in formulating jury instructions where it presents the law to the jury in a clear, adequate, and accurate manner. *See Commonwealth v. Lukowich*, 875 A.2d 1169, 1174 (Pa. Super. 2005). We review jury instructions for an abuse of discretion or error of law. *See Commonwealth v. Rush*, 162 A.3d 530, 540 (Pa. Super. 2017). A reviewing court considers the entire charge as a whole, rather than isolated fragments,

and considers it against the background of all evidence presented to determine whether error is committed, *i.e.*, if the instruction as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury on a material issue. *See Commonwealth v. Grimes*, 982 A.2d 559, 564 (Pa. Super. 2009).

Austin challenges the court's jury instruction that evidence of his suicidal ideation could be considered as evidence of consciousness of guilt. *See* Austin's Brief at 33-34.[14] Austin waived this claim by failing to make a timely objection at trial to the instruction he now challenges on appeal. *See* N.T., 4/11/24, at 543-44, 551; Pa.R.A.P. 302(b); Pa.R.Crim.P. 647(C); *Davis*, 273 A.3d at 1246; *Parker*, 104 A.3d at 29.

Austin next asserts the trial court undermined the Commonwealth's duty to prove guilt by instructing the jury, "if you conclude that any of the children were over the age of 16, then you may make a determination of whether or not consent was or was not granted in this case." *See* Austin's Brief at 34-35, citing N.T., 4/11/24, at 548. The Commonwealth charged Austin with multiple offenses; he does not indicate which offense the instruction applied to or why it was erroneous. Nor does he cite any case law to support his claim. For these reasons, Austin's claim is waived and due no relief on this issue. *See* Pa.R.A.P. 2119(a)-(d); *Commonwealth v. Fletcher*, 986 A.2d 759, 784-85 (Pa. 2009) (indicating a claim is waived where appellant fails to

---

[14] The instruction actually referred to Austin's apology **AND** his suicidal ideation. *See* N.T., 4/11/24, at 543. (emphasis added).

cite pertinent authority or provide relevant detail in his brief); **Commonwealth v. Armolt**, 294 A.3d 364, 377 (Pa. 2023) (court will not develop an argument for a party).[15]

Austin next asserts the evidence was insufficient to sustain his guilt for rape of a child, statutory sexual assault, involuntary deviate sexual intercourse with child, corruption of minors, indecent assault on person less than thirteen, indecent exposure, unlawful contact with minor, and indecent assault on person less than sixteen because there was no evidence presented to show **his** age. See Austin's Brief at 35-37. He asserts, correctly, statutory sexual assault requires he be more than four years older than the victim, corruption of minors requires he be eighteen, and indecent assault requires he be four or more years older than the victim, and there was no evidence of his age. **See id**.

> To review the sufficiency of the evidence, this Court assesses:
>
> [W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every

---

[15] We additionally note that a charge is considered adequate "unless the jury was palpably misled by what the trial judge said[.]" **Commonwealth v. Pointer**, 2025 PA Super 268 (Pa. Super, filed December 2, 2025, at \*19); quoting **Commonwealth v. Sandusky**, 77 A.3d 663, 667 (Pa. Super. 2013). Austin does not dispute the trial court properly instructed the jury on the elements of the charged crimes, nor does he explain how the trial court's instruction "palpably misled" the jury.

possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Burton*, 234 A.3d 824, 829 (Pa. Super. 2020) (internal citations omitted).

The trial court found there was sufficient circumstantial evidence from which the jury could infer Austin was over eighteen years old at the time of the offenses. *See* Trial Court Opinion, 3/19/25, at 36, citing *Commonwealth Miller*, 657 A.2d 946, 947-48 (Pa. Super. 1995) (holding age can be proved by circumstantial evidence, and finding circumstantial evidence proved the accused's age where, *inter alia*, he was dating the victim's mother at the time of the offenses, the victim identified him at trial, and the jury had the opportunity to observe him throughout trial).

In light of *Miller,* we conclude Austin's claim lacks merit. The evidence shows Austin attempted to act as a father figure to the victims, was Mother's boyfriend and fathered a child with her, was left in charge of the children overnight when Mother was working, and was described as A.B.'s stepfather. Additionally, the jury had the clear opportunity to view Austin throughout trial. The evidence thus sufficiently established he was over 18 years of age. *See*

***Miller***, 657 A.2d at 947-48. For the same reasons, Austin's argument the trial court should have granted judgment of acquittal based on allegedly insufficient evidence of his age, ***see*** Austin's Brief at 36-37, lacks merit.

Austin next asserts the verdict was against the weight of the evidence. ***See*** Austin's Brief at 24-26.

Our standard of review for a weight claim is well settled:

The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

* * * * *

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

* * * * *

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

***Commonwealth v. Mucci***, 143 A.3d 399, 410-11 (Pa. Super. 2016) (quoting ***Commonwealth v. Clay***, 64 A.3d 1049, 1054-55 (Pa. 2013)). A weight claim lacks merit unless the evidence is so tenuous, vague, and uncertain the verdict

shocks the conscience of the trial court. *See Commonwealth v. Akhmedov*, 216 A.3d 307, 326 (Pa. Super. 2019).

When a weight challenge is predicated on the credibility of trial testimony, appellate review of the trial court's decision is "extremely limited." *Commonwealth v. Bowen*, 55 A.3d 1254, 1262 (Pa. Super. 2012). "Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Id*. Conflicts in the evidence or contradictions in testimony of witnesses are exclusively for the fact finder to resolve. *See Commonwealth v. Sanders*, 42 A.3d 325, 331 (Pa. Super. 2012) (citation omitted). Moreover, "[b]ecause the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination [whether] the verdict is against the weight of the evidence." *Commonwealth v. Delmonico*, 251 A.3d 829, 837 (Pa. Super. 2021) (citation omitted).

Austin asserts D.B. gave inconsistent testimony about whether he committed abuse at one of the family's homes, and about whether he said anything during the abuse. *See* Austin's Brief at 25. He further asserts one of the incidents of abuse could not have occurred because other people were in the home at the time. *See id*. at 25-26. Finally, Austin asserts that Mother cast doubt on D.B.'s chronology of events. *See id*. at 26.

The trial court stated the jury had the opportunity to see and hear the witnesses and assess their credibility, and the weight claim lacked merit. **See** Trial Court Opinion, 3/19/25, at 28.

Austin fails to show the trial court abused its discretion by denying his weight motion. He presents credibility challenges that were within the jury's purview and do not provide a basis for relief. **See Bowen**, 55 A.3d at 1262; **Sanders**, 42 A.3d at 331.[16] Moreover, any minor inconsistencies in the victims' testimony did not compel the trial court to grant relief.

Austin's final claim asserts the court imposed an excessive sentence. **See** Austin's Brief at 22-24. There is no absolute right to challenge the discretionary aspects of a sentence. **See Commonwealth v. Hill**, 66 A.3d 359, 363 (Pa. Super. 2013). Before reaching the merits of a discretionary sentencing claim, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

**Commonwealth v. Edwards**, 71 A.3d 323, 329–30 (Pa. Super. 2013) (citation omitted).

---

[16] We also note concerning the abuse Austin said could not have occurred that D.B. testified Austin kept her young siblings downstairs while he committed that abuse. **See** N.T., 4/8/24, at 147-48.

Austin preserved his sentencing issue in a post-sentence motion, filed a timely appeal, and included in his brief a statement of the reasons relied upon for allowance of appeal. Therefore, we consider whether he has raised a substantial question.

In his Rule 2119(f) statement, Austin asserts the trial court failed to consider relevant sentencing criteria pursuant to 42 Pa.C.S.A. § 9721(b). Such a claim presents a substantial question. *See Commonwealth v. Riggs*, 63 A.2d 780, 786 (Pa. Super. 2012).

We consider the merits of Austin's claim mindful of the following:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015) (citation omitted).

When a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. *See Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010). We may only vacate a sentence within the guidelines where the sentence is "clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2). In addition, when the trial court has the benefit of a PSI, we "presume that the sentencing judge was aware of relevant information regarding the defendant's character and

weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988).

Austin asserts he had no prior crimes of sexual violence and a minimal criminal history "which suggest the statutory maximum [for rape of a child] is wholly inappropriate in these circumstances." ***See*** Austin's Brief at 24. He further asserts he had a job when arrested, "was a loving father to multiple children," ***see id***., and had severe obesity which presented a health risk. He asserts "[t]he appropriate sentence would be the statutory minimum of ten . . . years [of] confinement . . . as it more appropriately takes into account his background and rehabilitative needs." ***See id***.

The trial court stated Austin failed to order the notes of testimony from his sentencing hearing pursuant to Pa.R.A.P. 1911, precluding the court from discussing his claim. ***See*** Trial Court Opinion, 3/19/25, at 25.[17] The court nevertheless noted Austin's sentences were within the standard guidelines ranges and therefore appropriate. ***See id***. at 26.

Austin's argument does not assert the trial court failed to consider the relevant sentencing factors, but instead it failed to weigh them as he would wish. That is not a basis for relief. ***Commonwealth v. Proctor***, 156 A.3d 261, 274 (Pa. Super. 2017). In any event, the trial court did not return an excessive sentence. All of Austin's sentences, including his sentence for rape

---

[17] The notes of testimony were subsequently transcribed and are in the certified record.

of a child, were in the standard range, *see* N.T., 9/4/24, 34-38, and thus presumptively reasonable. ***See Moury***, 992 A.2d at 171 (Pa. Super. 2010). Additionally, the court reviewed the presentence report and stated its considered the sentencing guidelines, Austin's character, and his lack of remorse and determined incarceration was warranted. ***See id***. at 33-34. Thus, the court is presumed to have considered Austin's character and the mitigating statutory factors. ***See Devers***, 546 A.2d at 18. His claim thus lacks merit.

For the foregoing reasons, we affirm Austin's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 01/30/2026